Anthony HELTSLEY;  and Rebecca
Heltsley, Appellants,

v.

Brian Lee FROGGE, Sr.;  and Susan
Jean Frogge, Appellees.

Nos. 2009–CA–001867–ME,
2010–CA–000049–ME.

Court of Appeals of Kentucky.

June 17, 2011.

Dixie R. Satterfield, Bowling Green, KY,
for appellants and cross-appellees.

Nancy Oliver Roberts, Bowling Green, KY, for appellees and cross-appellants.

Before ACREE, CAPERTON and CLAYTON, Judges.

## OPINION

ACREE, Judge:

The primary issue on appeal is whether the Warren Family Court properly denied *de facto* custodian status to a child's grandparents. We must also determine whether the family court properly ordered the grandparents to pay a portion of the attorney's fees incurred by the child's father.[1]

### Facts and procedure

Brian Frogge, Sr. (Father) and Susan Frogge (Mother) were married on April 24, 2001, and lived near the Kentucky–Tennessee border for most of their marriage. A child (Child) was born to the couple on September 11, 2003. Prior to his parents' separation, Child's maternal grandparents (Grandparents collectively) provided the family significant financial support, and Mother and Child spent lengthy periods in Grandparents' home in Bowling Green, Kentucky, while Father was on active military duty.

Anticipating divorce proceedings, Mother and Child moved permanently to Grandparents' home on January 14, 2007. Three days later, Grandparents filed a petition alleging Child was dependent. The Warren Family Court agreed, and Grandparents were granted temporary custody on January 22, 2007. Mother continued to reside with Grandparents and Child.

On February 23, 2007, Mother commenced an action for dissolution of marriage from Father. She identified Grandparents as previously having been awarded temporary custody of Child. However, Mother's petition sought to regain custody of Child.[2] On April 16, 2007, when Father responded to Mother's petition, he did so *pro se*. His prayer for relief in that response specifically asks the family court to "[g]rant the Respondent joint custody, custodial care to be in favor of Respondent. . . ."

Grandparents were permitted to intervene in that action on July 17, 2007. They asserted they were Child's *de facto* custodians and requested they be granted permanent custody of Child.

On April 20, 2009, following several evidentiary hearings, the family court entered an order dismissing Grandparents' intervening petition, determining that they were not Child's *de facto* custodians and that they therefore lacked standing to pursue custody. On October 26, 2009, the family court also ordered Grandparents to pay Father's attorney fees. Grandparents took timely appeals from both orders.

### Standard of review

■ The family court's determination that Grandparents were not *de facto* custodians of Child was a conclusion of law based on facts that were uncontested. Accordingly, our review of this decision is *de novo. Laterza v. Commonwealth,* 244 S.W.3d 754, 756 (Ky.App.2008). "Under this standard, we afford no deference to the trial court's application of the law to the facts[.]" *Id.* (Citation omitted.)

■ We reverse a family court's award of attorney's fees following a custody dis-

---

1. These issues were raised in two separate appeals, but have been combined for the convenience of the parties and the Court.

2. Mother reiterated this request in her July 17, 2007 pleading entitled "Intervening Third[-]Party Complaint in [sic] Petition for Dissolution of Marriage."

pute only when the family court abused its discretion in making the award. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky.2004).

### Grandparents did not satisfy the requirements of de facto custodian status

Kentucky Revised Statute(s)(KRS) 403.270(1) controls the issue of *de facto* custody. Under that statute, the party claiming *de facto* custodian status must show the family court "by clear and convincing evidence" that he was "the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of ... one (1) year or more if the child is three (3) years of age or older[,]" as in the case *sub judice*. KRS 403.270(1)(a). The first step, therefore, is determining the date the one-year period began.

Before the family court, Grandparents claimed their period of *de facto* custodian care began on January 14, 2007.[3] Because of the analysis undertaken by the family court, it was not necessary for it to determine whether the Grandparents were, in fact, "the primary caregiver" under *Consalvi v. Cawood*. *Consalvi*, 63 S.W.3d at 197–98 (emphasis in original; citation and internal quotation marks omitted). Instead, the family court presumed Grand-

parents were the primary caregivers and focused its legal analysis on the "tolling" provision of KRS 403.270(1)(a) which states: "Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period."

Grandparents quoted *Sherfey v. Sherfey* as establishing two requirements for application of the tolling provision. 74 S.W.3d 777 (Ky.App.2002), *overruled on other grounds by Benet v. Commonwealth*, 253 S.W.3d 528 (Ky.2008). "First, the statute requires that the action be 'commenced' by the parent-not merely defended. Second, the statute requires the court appearance to be an action in which the parents seek to 'regain custody.'" *Id.* at 781.[4]

Father argued that his actions in the divorce proceeding were sufficient under KRS 403.270(1)(a) to defeat the Grandparents' claim of *de facto* custodian status. The family court agreed with Father.

In pertinent part, the family court's order found that "[t]he record in this civil dissolution proceeding shows that [Father] has been active ... although his participation was *pro se* for almost the entire

---

**3.** Although Grandparents originally claimed an earlier starting date for their caregiving, Grandmother admitted under oath that, prior to January 14, 2007, Grandparents were not "the" primary caregivers as required by *Consalvi v. Cawood*, 63 S.W.3d 195, 197–98 (Ky. App.2001), *abrogated on other grounds by Moore v. Asente*, 110 S.W.3d 336 (Ky.2003). Grandparents have not challenged that part of the family court's order.

**4.** Unfortunately, in *Sherfey* this Court referred to "the action" whereas the statute clearly refers only to "a legal proceeding." We previously criticized our imprecision in the use of such language in an unpublished opinion, *Stiffey v. Curtis*, 2004 WL 2486243 (Ky.App. 2004) (2004–CA–000450–MR), where we said,

most plainly understood the phrase "legal proceedings" [as used in KRS 403.270(1)(a)] has a broader meaning than the technical one the Stiffeys urge. According to Black's Law Dictionary, "proceeding" is a word much used to express the business done in courts. A proceeding in court is an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word "action," but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including ... all motions made in the action.

*Id.* at *1.

first year of the pendency of this action." The family court cited Father's *pro se* filing on September 11, 2007, of a document he entitled "Motion Regarding Visitation and Custody" in which Father "request[ed] the court to change" the custody and visitation orders to grant him "joint custody w/custodial care to [Father.]" And while acknowledging that Father's document was procedurally defective, the family court relied on the fact that the document "was not filed in response to anything. Rather it was an action initiated by [Father] in an effort to regain custody."

The family court also noted that on November 15, 2007, Father appeared in court, again *pro se*, and reminded the court of his pending "motion for order of visitation and custody." The court responded that it would hear the custody issue at the final hearing.

Furthermore, the family court noted that in December 2007, Father retained counsel who filed an answer to the Grandparents' intervening complaint, specifically pleading that Father "objects to the award of temporary custody or permanent custody with the [Grandparents], because [Father] desires to have custody of his own son. . . ."

The reasoning offered by the family court is that, even under *Sherfey,* "[c]ommencement of a legal proceeding to regain custody does not necessarily require the filing of a new court case by a parent." We agree with this statement and further believe that Grandparents misread *Sherfey.*

In *Sherfey,* the child in question was thirteen years old and walked to his grandparents' home to escape the turbulent household of his parents. From June 18, 1998, until June 17, 1999, the parents did nothing whatsoever to regain custody. Then, the parents arranged, by the clandestine efforts of a third party, to forcibly remove the boy from his grandparents' home and take him to a camp in Florida. The grandparents immediately went to court and on July 17, 1999, obtained an order granting them custody. In July 2000, one of the parents collaterally attacked the custody order. *Sherfey,* 74 S.W.3d at 779–80.

The parents argued that the grandparents' period of *de facto* custodianship was interrupted for purposes of KRS 403.270(1)(a) by: (1) the forced removal of the boy from the grandparents, and (2) their court appearances to defend a juvenile petition and a domestic violence action brought as a result of that forced removal. *Id.* at 780. With regard to the first argument, we said the child's "one-month stay at [the Florida c]amp . . . did not disqualify the grandparents [because that] nonconsensual transporting of [the child] was adjudged by the courts of Kentucky to be an act of domestic violence—not an abandonment of support by the grandparents."

More to the point of the issues before us in this case, we addressed the Sherfeys' other argument that "a legal proceeding ha[d] been commenced by a parent seeking to regain custody of the child[.]" KRS 403.270(1)(a). After describing the two requirements quoted above and relied upon by Grandparents, we made a point of demonstrating how far short of those requirements the Sherfeys fell.

From the plain language of the statute, it is clear that [the Sherfeys] satisfied neither of these requirements. Not once during the two years [the child] spent with his grandparents did [the Sherfeys] *initiate* a legal action to *regain custody* of [their child]. In fact, it appears they voluntarily abandoned [the child], showing little concern for his daily well-being for nearly two years. Accordingly, we affirm the trial court's

finding of *de facto* custodianship by the grandparents.

*Id.* at 781. The facts of the case before us are clearly distinguishable from *Sherfey*.

We conclude, as did the family court, that neither KRS 403.270(1)(a) nor *Sherfey* requires a parent to file a new and separate lawsuit in order to suspend the running of time needed to confer standing as a *de facto* custodian. In addition to Father's efforts noted by the family court, we believe others were overlooked.

Father's response to Mother's original petition specifically demanded custody. "All pleadings shall be so construed as to do substantial justice." Kentucky Rules of Civil Procedure (CR) 8.06. Furthermore, if Mother's demand for custody is fairly called a claim of custody, Father's demand is fairly called a counterclaim. *See* CR 8.03 ("[T]he court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation" of a counterclaim). We see no reason for failing to construe Father's *pro se* response as Father's commencement of a legal proceeding to regain the custody of his child.

There also can be no doubt that when Mother filed her petition, she commenced proceedings to regain custody of Child for herself. Even if, as is indicated in the record, there was collusion between Mother and Grandparents intended to result in an award of custody to Grandparents, it "was a purely technical device, a method for evading the natural father's superior claim to custody 'if suited to the trust' as against the grand[parents], as specified in KRS 405.020(1)." *Greathouse v. Shreve,* 891 S.W.2d 387, 390 (Ky.1995).

Under these circumstances, proper application of the law mandated denying Grandparents *de facto* custodian status. Mother's petition, Father's response, as well as his motions, and finally his counsel's answer to Grandparents' intervening complaint all occurred prior to the date on which Grandparents might have become *de facto* custodians under KRS 403.270(1).[5] They were sufficient steps to justify the family court's ruling that Grandparents were not the primary caregivers for the statutory period. Therefore, we affirm the family court's April 20, 2009 order denying Grandparents standing to proceed as Child's *de facto* custodians.

### *The family court's order requiring Grandparents to pay $2,500 of attorney's fees does not constitute manifest injustice*

■ In an order dated October 26, 2009, the family court instructed Grandparents to pay $2,500 to Father's attorney. In so ruling, the family court considered an affidavit of Father's attorney and an invoice for the services she had provided Father in the custody dispute. According to the invoice, Father had accumulated more than $36,000 in attorney's fees. Grandparents assert the family court's reliance upon the invoice and the award of $2,500 constituted an abuse of discretion and was the result of denial of due process.

■ In response, Father has provided to this Court explanations for various entries of the billing invoice, though he presented none of this evidence to the family court. "Normally, matters not a part of the record will not be considered on appeal." *Wells v. Wells,* 406 S.W.2d 157, 158 (Ky.1966). We therefore decline to consider that portion of Father's brief which presents new evidence regarding the bill-

---

**5.** Again, we are presuming they were "the primary caregiver[s]." *Consalvi,* 63 S.W.3d at 197–98.

ing statement. We therefore consider only the merits of Grandparents' arguments.

KRS 403.220 permits a family "court from time to time after considering the financial resources of both parties [to] order a party to pay a reasonable amount for the cost to the other party of maintaining or defending *any proceeding under this chapter and for attorney's fees ....*" KRS 403.220 (emphasis supplied).

Contrary to Grandparents' position, it was not necessary for the family court to conclude that Grandparents employed delay tactics to justify an award of attorney's fees to Father. Rather, the only factor the family court was required to consider was the financial resources of the parties.[6] *Poe v. Poe,* 711 S.W.2d 849, 852 (Ky.App. 1986). The mere fact that litigation was lengthy and hotly contested, paired with consideration of the parties' relative financial resources, is sufficient. *See Johnson v. Johnson,* 305 Ky. 430, 204 S.W.2d 592, 594 (1947). It was Grandparents' position throughout the custody dispute that Father was unable to financially support Child, while Grandparents were capable of doing so. Given the lengthy, contentious dispute and the evidence of the relative financial resources of the parties, the family court's award of attorney fees cannot be said to be an abuse of discretion.

█ Grandparents next assert the invoice was partly fabricated, or at least unreliable, and the family court should not have relied upon it to award fees. In particular, they claim the invoice contains improper charges because some events are entered twice, some events could not possibly have been completed on the dates listed, and some charges are simply unexplained.

These supposed inconsistencies in the invoice do not render the entire document unreliable or the family court's award of attorney's fees unreasonable. The family court ordered Grandparents to pay only a small portion of Father's $36,000 legal bill. Even discounting all the invoice entries to which Grandparents object, Father's total legal bill was, without any reasonable doubt, well over $2,500. Additionally, the parties and their attorneys spent considerable time before the family court judge *sub judice.* That judge was certainly in a position to determine whether $2,500 was too great a sum to award. *Gentry v. Gentry,* 798 S.W.2d 928, 938 (Ky.1990) (A trial judge is in the best position to assess conduct and tactics which may unnecessarily increase the amount of attorney's fees.). Given the nature and length of the dispute, it was reasonable for the family court to award $2,500 in fees.

Grandparents' last argument addressing attorney's fees is that they were denied due process when the family court refused to allow them to cross-examine Father's attorney regarding the billing statement. They have cited no caselaw to support their position. This Court has addressed this matter in the past, and we cannot improve on the language we used then.

Our courts have established that an alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal. [W]ithout any argument or citation of authorities, [an appellate] [c]ourt has little or no indication of why the assignment represents an error. It is not our function as

---

6. The order awarding attorney's fees does not explicitly address the financial resources of the parties. If, however, Grandparents believed the order was deficient for this reason, they should have moved the Court to make additional findings, or alter or amend the order on this ground, pursuant to Rule 52. They did not do so.

an appellate court to research and construct a party's legal arguments, and we decline to do so here.

*Hadley v. Citizen Deposit Bank,* 186 S.W.3d 754, 759 (Ky.App.2005) (citations and quotation marks omitted).

Finding no abuse of discretion, we affirm the October 26, 2009 order awarding attorney fees.

### *Conclusions*

The Warren Family Court correctly determined Grandparents were not *de facto* custodians of Child. It was not an abuse of discretion to require Grandparents to pay $2,500 of Father's attorney's fees. Accordingly, we affirm both as to Court of Appeals Action No. 2009–CA–001867 and No. 2010–CA–000049.

ALL CONCUR.