**Chip ROBISON, Appellant**

v.

**Pamela THEELE, and Michael Theele, Appellees**

NO. 2013–CA–001077–ME

Court of Appeals of Kentucky.

RENDERED: APRIL 24, 2015; 10:00 A.M.

Brief for Appellant: Christy H. Shircliff, Louisville, Kentucky.

Brief for Appellees: David M. Cross, Albany, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; COMBS AND MAZE, JUDGES.

## OPINION

COMBS, JUDGE:

Chip Robison appeals several orders of the Clinton Circuit Court relating to the custody of his minor children. The orders awarded custody and visitation to Pamela and Michael Theele, the maternal grandparents of the children. They also imposed sanctions on Chip. After our review, we vacate the orders and remand.

Chip and Holli married in 2004. Two children were born of the marriage. They moved to Washington State. On May 30, 2010, Holli and the children moved to the residence of the Theeles, her parents, in Clinton County, Kentucky. A divorce action was filed in Washington in July 2010. Chip then moved to Cooke County, Tennessee, in order to be closer to the children. The divorce action was transferred from Washington State to Clinton Circuit Court in January 2011. Chip and Holli entered into a separation agreement on May 17, 2012, which was incorporated into the decree of dissolution entered on May 30, 2012. It awarded joint custody to Chip and Holli—with Holli designated as the primary residential custodian.

During the pendency of the litigation, Holli underwent treatment for cancer. She continued to communicate with Chip in arranging for his visitation and participation in the children's activities. Chip exercised regular visitation and paid child support. Holli died on January 18, 2013.

On January 25, 2013, the Theeles filed a petition seeking to be designated as *de facto* custodians of the children. They also filed a motion for entry of what they entitled a *status quo ex parte* order to maintain the visitation schedule that had been followed while Holli was alive. The court entered their requested order on the very day that the motion was filed. The record reflects that Chip was not served with the pleadings and order until January 31, 2013—six days after the fact.

On February 15, 2013, the Theeles filed a motion to have Chip held in contempt for enrolling his children in school in Tennessee. On February 22, 2013, Chip filed a motion to dismiss the petition for *de facto* custodian status. On March 6, 2013, the trial court overruled Chip's motion to dismiss and awarded standard visitation to the Theeles.

On March 18, 2013, the trial court held the first part of a hearing to determine *de facto* custodian status. On March 19, the Theeles filed an amended petition for *de facto* custodian status and included a new motion—for grandparents' visitation. On March 21, the court entered an order setting visitation for the Theeles on specific dates between the date of the order and April 15, which was the date of the second portion of the hearing. On April 30, 2013, the Theeles filed a motion for contempt alleging that Chip had not complied with the March 21 order. Chip had been taking the older child to Nashville for therapy on Saturday mornings, allegedly interfering with the visitation awarded to the Theeles.

The trial court entered another order on May 6, 2013. It set a hearing for May 20 regarding the contempt motion. Additionally, the court ordered Chip and the Theeles to mediate the case. Although Chip did not appear at the May 20 hearing, he made himself available by telephone. At the conclusion of the hearing, the court ordered Chip to submit proof from the older child's therapist explaining why therapy had to be on Saturday mornings. It also scheduled mediation for June 14, 2013.

On June 10, 2013, the Theeles filed a motion for sanctions against Chip and asked the court to strike all of his pleadings. The same week, Chip informed counsel that he would not be able to attend the scheduled mediation due to a work conflict. He offered to be available by telephone. However, the mediator canceled the mediation because of his physical absence.

The trial court held a final hearing on June 17, 2013, to consider the *de facto* custodian petition, the contempt motions, and the motion for sanctions. Chip's counsel informed the court that because Chip had missed several days of work previously, he was unable to attend either the hearing on May 20 or the mediation; however, counsel emphasized that he had offered to participate in both by phone. The court announced that it "took judicial notice that most people who work don't want to miss work" because they make money by working. Additionally, in response to the court's earlier order, Chip's counsel explained to the trial court that the older child's therapy had to take place on Saturday mornings because it was in Nashville—several hours away from Chip's home. The court responded, "you're talking to people who drive to Louisville for dinner, two-and-a-half hours. I don't know how that could be inconvenient." Presumably, it was again taking some sort of judicial notice—albeit undefined and of questionable relevance.

The court proceeded to opine that Chip had demonstrated a bad attitude. Accordingly, it struck portions of Chip's pleadings. The court then awarded *de facto* custodian status to the Theeles, gave them sole custody of the children, and granted Chip *supervised* visitation with his own children to take place in Kentucky with no explanation or findings to substantiate any of its various rulings.

Chip filed a notice of appeal and a motion to stay the judgment of the trial court on June 21, 2013. On August 22, 2013, a panel of this court found that the trial court had acted inappropriately and granted Chip's motion. On appeal, Chip bases his arguments on procedural error; thus, our review is *de novo*. *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky.2008).

■ Chip first argues that the trial court erred in issuing the *status quo ex parte* order. We agree.

The Theeles have not provided any legal authority for a "*status quo ex parte* order," and we have been unable to find any.[1] Essentially, it appears to be an emergency motion for temporary custody. Kentucky Revised Statute[s] (KRS) 620.060 governs emergency custody orders. Under the statute, emergency *ex parte* orders are only permissible when:

(a) The child is in danger of imminent death or serious physical injury or is being sexually abused;

---

1. Our research revealed an *"ex parte status quo order"* in Oregon. *Alloway and Duncan*, 165 Or.App. 624, 996 P.2d 1010 (2000). That was the only similar pleading we could find in the entire United States as to an order so designated.

(b) The parent has repeatedly inflicted or allowed to be inflicted by other than accidental means physical injury or emotional injury. This condition shall not include reasonable and ordinary discipline recognized in the community where the child lives, as long as reasonable and ordinary discipline does not result in abuse or neglect as defined in KRS 600.020(1); or

(c) The child is in immediate danger due to the parent's failure or refusal to provide for the safety or needs of the child.

KRS 620.060(1).

In this case, the trial court granted the *ex parte* motion based on several affidavits averring that the children were well cared for in the home of their grandparents. The trial court merely stated that the Theeles had been their primary caretakers and that if their father became their primary custodian, the children would be relocated to a new school.

The sparse findings fell remarkably short of the statutory requirements. The motion did not include any allegations of danger or abuse, and the trial court did not recognize that deficiency in the pleading. On appeal, the Theeles do not present any proof suggesting otherwise. On these grounds alone, we can only conclude that the order was erroneously entered and that it is, therefore, unenforceable.

■ However, we also note that KRS 620.060(3) provides that an emergency custody order is only effective for seventy-two hours unless a hearing is held regarding the motion. The record shows that no hearing was held during the seventy-two hour period following entry of the order on January 25. Therefore, even if it had been valid when entered, the order expired before Chip was served with it on January 31. Because the order was invalid and unenforceable, any findings of contempt of the order are also invalid and unenforceable. The Theeles have provided no legal authority to support any other conclusion.

■ Chip's remaining arguments concern the petition for *de facto* custodianship and the order of June 18, 2013, which imposed extreme and unwarranted sanctions for contempt. As noted earlier, another panel of this court has already addressed with disapproval the finding of contempt. We now concur with its holding.

As to that earlier contempt hearing held by the trial court, our Court noted the following facts: that the trial court found Chip in contempt because he had violated visitation orders; that he offered to participate in a hearing telephonically instead of in person with his counsel in the courtroom; and that he had offered to participate in mediation telephonically. In imposing sanctions, the trial court: struck Chip's pleadings; named the Theeles *de facto* custodians of the children; and limited Chip to *supervised* visitation with his own children within Kentucky.

Our Court held:

The rationale by which we reach our decision that [Chip] is entitled to a stay pending appeal is founded upon the well-established principle that "[w]ithout a finding that the parent is unfit or without clear and convincing evidence of a knowing and voluntary surrender of parental rights, a parent is entitled to custody." *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky.2004). The circuit court made absolutely no findings supporting either proposition prior to awarding custody of these children to their grandparents against the wishes of the custodial parent.

Although this Court recognizes the breadth of a trial court's inherent au-

thority to compel compliance with its orders through its contempt power, that power is not unlimited. In *Lewis v. Lewis,* 875 S.W.2d 862 (Ky.1993), the Supreme Court of Kentucky cautioned that a court must make appropriate findings of fact supporting the imposition of sanctions. Although the holding in *Lewis* was predicated upon the question of the ability of a contemnor to satisfy a support judgment and purge himself of contempt, we are convinced that its holding extends to the making of requisite findings prior to depriving a natural parent of his superior right to custody of his children.

In this case, the trial court made no findings to support its conclusion that grandparents had established their status as *de facto* custodians, no findings regarding father's fitness as custodian, and no finding as to the children's best interests.

Before us in this appeal, the Theeles have not provided any authority to cause us to reject the previous reasoning of this Court. Therefore, we must hold that the trial court's sanctions cannot stand.

■ Finally, we address Chip's argument that the trial court erred in denying his motion to dismiss the *de facto* custodian petition. We reiterate our time-honored, sacrosanct recognition of "the superior right of natural parents to the care, custody, and control of their children as well as the constitutionally protected right of a parent to raise his or her own child." *Brumfield v. Stinson,* 368 S.W.3d 116, 118 (Ky.App.2012). In support of that line of reasoning, the General Assembly has enacted KRS 403.270 in order to provide specific qualifications for *de facto* custodianship.

In pertinent part:

"de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for ... a period of one (1) year or more.... Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period."

KRS 403.270(1)(a).

■ The Theeles argue that Holli's illness rendered her unable to function as a parent beginning in March 2011—more than one year prior to her death in January 2013. Chip asserts that the issue is precluded because the dissolution proceedings tolled the time period. We agree.

Holli filed a petition for dissolution of marriage in Clinton Circuit Court on January 5, 2011, asking for sole custody or joint custody of the children. On January 25, 2011, Chip responded with his own demand for sole custody or joint custody. The matter was not resolved until May 17, 2012, in a separation agreement that was incorporated into their decree of dissolution on May 30, 2012. Therefore, Chip argues that the calculation of one year commenced no earlier than May 17, 2012. We agree.

In *Heltsley v. Frogge,* 350 S.W.3d 807 (Ky.App.2011), our Court held that contest of custody issues in a divorce proceeding is sufficient to toll the calculation of time regarding *de facto* custodianship. A demand for custody in an answer to a similar demand in a petition is deemed to be the equivalent of filing a counterclaim for custody. *Id.* at 811. In harmony with that reasoning, we are persuaded .that Chip's efforts to gain custody tolled the *de facto* custodianship time period. The Theeles' petition in January 2013 was, therefore,

premature. Thus, the court erred in denying Chip's motion to dismiss.

 Finally, Chip also challenges the trial court's award of grandparent visitation to the Theeles. KRS 405.021 directs that grandparents may receive visitation rights after a circuit court makes the determination that visitation is in the best interest of the child. In deciding grandparent visitation, the court must presume that a parent is acting in the *child's* best interest, a presumption that can be rebutted by the petitioning grandparent. *Walker v. Blair*, 382 S.W.3d 862, 874–75 (Ky. 2012). However, the grandparent bears the burden to prove by clear and convincing evidence that visitation is in the child's best interest in order to overcome the primacy of parental wishes. The court must consider several factors in its determination of the child's best interest. *Id.* at 875.

In this case, the petition for grandparent visitation was filed on March 19, 2013. The record reveals that the trial court had previously stated that the Theeles *would have* grandparent visitation. It conclusorily awarded visitation in its order of June 18, 2013. However, the record is wholly devoid of requisite findings. Accordingly, we cannot affirm the award.

We vacate the orders of the Clinton Circuit Court and remand this matter for additional proceedings.

ALL CONCUR.