RENDERED:  JULY 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0141-ME

ALICE GRUNDY GEER                                        APPELLANT

|     | APPEAL FROM HARDIN CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE PAMELA ADDINGTON, JUDGE |
|     | ACTION NO. 21-D-00009-001 |

AUSTIN SCOTT GEER                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND L. THOMPSON, JUDGES.

COMBS, JUDGE:  Appellant, Alice Grundy Geer (Alice), appeals from a domestic violence order (DVO) entered by the Hardin Family Court based upon a petition for an order of protection filed by her husband, the Appellant, Austin Scott Geer (Austin), on behalf of their two-year-old child.  After our review, we affirm.

On January 7, 2021, Austin filed a petition for order of protection in Hardin Family Court against Alice on behalf of their minor child, who at that time was a little more than two years of age, having been born in September 2018. Austin alleged that Alice struggles with mental illness, that she has not been responsible to be with the child without supervision, and that she had spent "multiple months" in a mental hospital in 2020. On January 5, 2021, Alice showed up at the child's daycare facility and entered without permission "to grab" the child. Austin also alleged that a few weeks prior to the filing of his petition, he had to call Elizabethtown police to have Alice removed after she showed up at his home. Although Austin had an agreement with Alice's family that the child could visit with her if supervised, the family permitted Alice to take the child to her house without supervision. Austin stated that "[w]e are currently going through a divorce and I have requested full custody with supervised visits and I am afraid she will harm [the child] to get back at me."

On January 7, 2021, Alice was served and summoned to appear for the hearing scheduled for January 11, 2021.[1] The hearing was conducted remotely. Alice was not in attendance; however, her counsel, Dawn McCauley, was present

---

[1] The parties attached copies of the hearing transcript to their briefs. The transcript is not included in the certified record on appeal. Therefore, we cannot consider it. *Smith v. Smith*, 450 S.W.3d 729 (Ky. App. 2014). However, the record on appeal does include a DVD recording of the January 11, 2021, hearing, which we have reviewed.

and explained that Alice was at work but that she was supposed to call in. Austin, *pro se*, was present.

Alice's counsel advised the court that the parties' divorce case was pending in Jefferson County and that there was a motion to transfer the case to Hardin County. The court asked Austin if he still wanted to pursue the emergency protective order or if he thought the situation could be resolved in the divorce case. Austin responded that he wanted to move forward. He explained that his intention was not to keep the baby from Alice, but that it was very important to have supervised visitation at this time to assure that the baby is safe and receives proper care.

After Austin was sworn, the family court asked him what happened to cause him to file the petition. Austin explained that since February 2020, the child has resided with him the majority of the time. On three different occasions, Alice had to stay in a facility to get help for her mental health. Austin explained that Alice was diagnosed "with bipolar disorder" according to the paperwork he had from the doctor. The condition was not new, but it really took "an effect" after the baby was born. Austin related an incident when the child had a broken arm while in Alice's care when he was a little more than a year old. "She always kept him in a bed and he would always fall out."

Austin also testified about "just the fear of . . . the other day, what happened at day care." Due to COVID-19 rules, Austin had never set foot in the day- care facility. According to Austin, Alice claimed that the COVID-19 signs had been taken down. She went in to grab the child and "kind of threw a fit." That bothered the director and the daycare gave Austin a call. Austin also testified that there were other things -- *e.g.*, "taking a child [outside] when it's twenty degrees with no coat."

On cross-examination, Austin testified that the broken-arm incident occurred in 2019. Austin explained that he had permitted Alice to have the child after that incident without supervision when he "felt that she was capable and not in any of her episodes . . . ." At that point, the family court interjected and asked Austin -- after the broken arm -- what caused him to file the petition, why he no longer felt that Ms. Geer could provide for the child safely? Austin responded that in the last few weeks, he became concerned because of Alice's behavior, behavior that he has seen in the past. "She was not able to go to work for two weeks in the past month, because she gets really depressed, she can't function very well." Austin also explained that Alice's dad had said that when the child visited his home, he would supervise Alice with the child. But nonetheless, he allowed Alice to take the child to her home.

The family court then stated that Austin "saw some of the signals that [he] saw before and wanted to take action before the child was hurt again." The court apologized for having to recapitulate these facts, noting that "considering everything and the age of the child," it made a finding of domestic violence. The court entered a DVO on the child's behalf for a period of one year and ordered that Alice have supervised visitation with the child at her expense at the parent visitation center in Elizabethtown or with an adult approved by Austin. The family court left that choice to Austin's discretion, explaining that visitation had to be supervised until the court could obtain more evidence from the divorce case.

In its written Order/Form AOC-275.3 entered on behalf of the minor child on January 14, 2021, the family court found in relevant part as follows:

> ☑ For the Petitioner against the Respondent in that it was established, by a preponderance of the evidence that an act(s) of ☑ domestic violence and abuse . . . has occurred and may again occur . . . .

Furthermore, the court ordered that its "findings of fact and conclusions of law announced on the record . . . are expressly and specifically incorporated herein by reference as if written in full[,]" citing *Boone v. Boone*, 463 S.W.3d 767, 768 (Ky. App. 2015), and *Kindred Nursing Centers, Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010).

Alice appeals. She first argues that she was denied due process as a result of the limited time allowed for the hearing and the denial of any meaningful

-5-

cross-examination.[2]  However, Alice's counsel did not voice any objection at the hearing, nor did she request a continuance.  We agree with Appellee that the issue is not preserved for our review.  The lack of preservation notwithstanding, we find no abuse of discretion in the court's conduct of the hearing in the case before us. *Addison v. Addison*, 463 S.W.3d 755, 762 (Ky. 2015) (trial court vested with discretion in conduct of trial which appellate court will not interpose to control absent abuse of discretion).

We address Alice's remaining arguments together.  She argues:  that the court heard no evidence of any act of domestic violence that she committed, that none was alleged in the petition, and that the court failed to make sufficient written findings.  We disagree.

KRS[3] 403.720(1) defines "Domestic violence and abuse" as:

physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, **or the infliction of fear of imminent physical injury**, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]

(Emphasis added.)

---

[2] We may not consider any reference to matters outside the record interjected into Appellant's brief regarding why she did not attend the hearing.  *Heltsley v. Frogge*, 350 S.W.3d 807 (Ky. App. 2011).

[3] Kentucky Revised Statutes.

The allegations of the petition and the testimony presented at the hearing established that Alice suffers from mental illness, which has required multiple bouts of in-patient treatment and impairs her ability to function and properly care for the child. Austin filed the petition because he no longer felt that Alice could provide for the child's safety based upon her recent behavior -- which he had witnessed in the past. Alice had entered the child's daycare facility in violation of its COVID-19 restrictions and "had a fit"; she sent her two-year-old child out without a coat in frigid weather; and she was unable to function. Austin testified that she was so depressed that she was unable to go to work for two weeks out of the past month.

In *Collett v. Dailey*, 371 S.W.3d 777 (Ky. App. 2011), the daughter and guardian of an elderly woman, who recently had broken a hip, filed a petition for a DVO alleging that her brother, James, had committed numerous acts of verbal abuse, harassment, and interference with their mother's caretakers. This Court held as follows:

> Because of [the mother's] fragile condition, these actions by James meet the statutory definition of domestic violence. Consequently, James put her (or, in this case, her guardian) in fear of imminent physical injury and serious physical injury as contained in the definition of domestic violence found in KRS 403.720(1). Therefore, in this case, with this petitioner, the evidence supports the issuance of a protective order.

*Id.* at 778-79.

In the case before us, the family court stated at the close of the hearing that Austin "saw some of the signals that [he] saw before and wanted to take action before the child was hurt again." Clearly, the family court believed that Austin was in fear of imminent physical injury to the child based upon his uncontroverted testimony regarding Alice's behavior. The court made a finding of domestic violence based on "everything" and in consideration of the age of the child. In its written order, the court expressly and specifically incorporated its findings of fact and conclusions of law announced on the record, citing *Boone*, 463 S.W.3d at 768 ("[W]e may consider oral findings of fact and conclusions of law only if they have been specifically incorporated into a written and properly entered order.").

We are satisfied by our review of the record that the family court's findings are sufficient under the facts of this case. We are also satisfied that Austin established by a preponderance of the evidence that domestic violence occurred because Alice's actions put him in fear of imminent physical injury to their young child. KRS 403.720(1).

Accordingly, we AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Dawn L. McCauley         Jeremy S. Aldridge
Lebanon, Kentucky         Elizabethtown, Kentucky