RENDERED: OCTOBER 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0395-MR

TATUM BETH BAILEY                                                          APPELLANT

v.
APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 19-CI-00036

GERALD HENRY BAILEY,
MADONNA LOUISE BAILEY, AND
MICHAEL WAYNE SEXTON                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND TAYLOR, JUDGES.

MAZE, JUDGE:  Tatum Beth Bailey (Tatum), *pro se* appeals from an order of the

Letcher Circuit Court denying her petition for custody and permitting her son, S.S.,

to remain in the custody of his maternal grandparents, Gerald and Madonna Bailey

(the Baileys).  We affirm.

## BACKGROUND

In action No. 07-J-00193-003, S.S. was removed from Tatum's custody in a dependency, neglect, and abuse action in Letcher District Court.[1] The basis for this removal is unclear. Permanent custody of S.S. was awarded to the Baileys in that action in 2011.

In December of 2012, Tatum entered guilty pleas to numerous cold check charges. Although she reached a diversion agreement with the Commonwealth, there was a motion to void pre-trial diversion filed on June 12, 2013, and on October 28, 2013, her diversion agreement was declared void. She was then sentenced in accordance with its terms.

In 2019, following her release, Tatum filed what is styled a "Petition for Custody" in Letcher Circuit Court and on September 29, 2020, a final hearing was held before the domestic relations commissioner.

Glenn Cornett testified on behalf of Tatum. He stated that he knows the Baileys and he knows the child. Based upon his observations, the child gets along with the Baileys. Madonna Bailey takes him to school. On cross-examination, he stated that there is not much interaction between Tatum and her son.

---

[1] Records of those proceedings were not provided to this Court.

Tatum testified that S.S. has been with the Baileys since he was three years old. He was placed there by social services. She was incarcerated for eighteen months for violation of her felony pre-trial diversion agreement arising out of numerous bad check charges.

Her nursing license was suspended in 2011 because narcotics were missing from the hospital where she was employed. She admitted to having substance abuse problems, specifically a cocaine addiction. She believes she would be eligible for reinstatement. However, she is unable to work due to poor health.

She now earns money by cleaning for her neighbors. She lives in a home with her cousin, Jeff Adams, who helps her with the bills. However, he is preparing to move out. She admits that the home only has one window and one door and would be difficult to exit in the event of fire. She also admits that there have been bed bugs in the home.

She testified that she has an active DVO[2] against Gerald Bailey and does not have a good relationship with Madonna Bailey. She stated that she has not been in their house since 2018 but she believes there is domestic violence in the home.

---

[2] Domestic Violence Order.

She is aware that S.S. suffers from Asperger's Syndrome and has seizures for which he takes medication. She believes that he needs help with "life skills."

Claude Short, a social worker, was also called as a witness on Tatum's behalf. He testified that he was called to investigate a report of suspected abuse by Tatum about a year ago. He found the report to be unsubstantiated.

Jeff Adams, Tatum's cousin, testified that they live in a three-bedroom house. Although S.S. has a bedroom upstairs, he most often sleeps downstairs with his mother. He stated that he is moving out of the home and will not be living with the child, although he will continue to help her financially.

The first witness called on behalf of the Baileys was Dorothy Ison, the child's paternal grandmother.[3] She testified that it was in S.S.'s best interest to remain in the Baileys' custody since they have a good relationship, and the Baileys see to his regular needs and his education. They also taken him places and do things with him.

Her husband, James Ison, testified that they enjoy having S.S. visit with them every other week. He stated that the child needs to live with the Baileys.

---

[3] The Isons are the parents of Michael Wayne Sexton, the father of S.S. A guardian *ad litem* was appointed for purposes of service while Sexton was incarcerated and he appeared *pro se* at the final hearing.

Madonna Bailey testified that she enjoys taking S.S. places such as Pigeon Forge and Gatlinburg. She never makes promises to him to get him to stay with her. Any promises she makes to him are because she loves him.

She stated that because of his Asperger's he has fears and she believes that Tatum needs to be more understanding about these fears. She indicated that, while S.S. is functioning at the appropriate grade level, he is emotionally immature.

On cross-examination, Mrs. Bailey was asked about S.S.'s school records. She testified that the custody dispute has affected his grades. She stated that he does not take schoolwork to Tatum's house. His records also reflected behavioral issues including suspension for such things as hitting a teacher and stabbing another student. She indicated that she does not know if Tatum was told about these episodes. She said that she tried to keep her informed, but she admitted that she does not call her about parent-teacher conferences because she thought Tatum got the information from the website.

Finally, the commissioner conducted an *in camera* interview with S.S. He is now thirteen years old. He stated that he likes living with "Mamaw and Papaw" and visiting with his paternal grandparents but he does not like having visitation with Tatum. He indicated that she forces him to do things that he does not like to do such as keep a pocketknife in his pocket. He also stated that if he

doesn't do what she wants, she "takes stuff away." He also disclosed that Jeff keeps firearms in the home. He stated that he does not get along with Jeff. He has not been told that Jeff is moving. He does not want to go live with his mother.

Following that hearing the proposed findings of fact and conclusions of law filed on behalf of the Baileys were adopted by the commissioner. Exceptions were filed on behalf of Tatum and the matter was heard before the trial court. Tatum's exceptions were overruled. This appeal followed.

Although her arguments are far from clear, it appears that Tatum argues that the district court did not have jurisdiction to award permanent custody to the Baileys. She also asserts that since there has been no showing that the Baileys were *de facto* custodians, they had no standing to seek custody. Finally, she claims that the circuit court erred in failing to appoint a guardian *ad litem* for S.S.

The Baileys have noted that Tatum has failed to make appropriate citations to the record which would indicate where her claims of error are preserved. CR[4] 76.12(4)(c)(v). Therefore, the Baileys argue that her claims must be reviewed under the "manifest injustice" standard requiring a determination of whether there was a "substantial possibility" that the results would have been different if the error had not occurred.

---

[4] Kentucky Rules of Civil Procedure.

They next assert that since Tatum's petition was an original custody action the best interest analysis set forth in KRS[5] 403.270 was applicable and therefore the trial court properly considered the district court's custody award as relevant to the circumstances of S.S.'s placement. KRS 403.270(2)(j). Further, the Baileys argue that the trial court did not err in its determination that they had standing as *de facto* custodians. Finally, they state that, while there was some confusion as to whether the record reflected that S.S. or his father was appointed a guardian *ad litem*, it was clarified when the court sustained Tatum's exception No. 1 to the commissioner's findings of fact and conclusions of law. Regardless, they note that Tatum did not request that an appointment be made for S.S.

## STANDARD OF REVIEW

The trial court's findings of fact are reviewed pursuant to a clearly erroneous standard, giving deference to the lower court's opportunity to observe witnesses and to judge their credibility and assess the weight to be given to their testimony. If the trial court's findings are supported by substantial evidence, they will not be disturbed. *Glodo v. Evans*, 474 S.W.3d 550, 552-53 (Ky. App. 2015) (citing *Sherfey v. Sherfey*, 74 S.W.3d 777, 782 (Ky. App. 2002)). However, this Court's review of the trial court's application of the law to those facts is *de novo*. *Id*.

---

[5] Kentucky Revised Statutes.

## ANALYSIS

### I.    Preservation:

CR 76.12(4)(c)(v) requires an appellant to set forth in his brief where and how an issue was preserved for appeal. CR 76.12(8)(a) provides that "failure to comply with any substantial requirement of this Rule 76.12" may result in a brief being stricken and the appeal being dismissed. *Commonwealth v. Roth*, 567 S.W.3d 591, 593 (Ky. 2019).

Clearly, Tatum has failed to properly cite where her arguments are preserved. Although this Court would be well within the law to strike her brief for failure to comply, as this matter involves the care and custody of a minor child the Court is inclined to proceed with its analysis.

In the recent case of *Ford v. Commonwealth*, 628 S.W.3d 147 (Ky. 2021), the Court re-examined the options available to a reviewing court where a litigant fails to comply with the Civil Rules. It reiterated the options: ignore the deficiency, strike the brief, or review for manifest injustice only as set forth in *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). However, the Court limited the option of employing the manifest injustice standard of review "only for errors in appellate briefing related to the statement of preservation." *Id*. at 155.

The Court reasoned that where a party fails to advise the reviewing court of where his error is preserved, the appellate court may treat it as unpreserved and therefore may review it for palpable error as provided in RCr[6] 10.26, upon a showing that a "substantial right" has been affected by the error thereby resulting in "manifest injustice." As there can be no more "substantial right" than that of a parent to raise her own child, we will review this matter under the manifest injustice standard.

## II.   Jurisdiction:

Although Tatum has quoted KRS 620.027, she fails to recognize its import. It states, "The District Court has jurisdiction, concurrent with that of the Circuit Court, to determine **matters of child custody and visitation in cases that come before the District Court** where the need for a permanent placement and custody order is established as set forth in this chapter." (Emphasis added.) Such matters refer to dependency, neglect, and abuse actions, not original custody proceedings filed in circuit court.

KRS 620.027 further provides that, "[i]n any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interest of the child." In *L.D. v. J.H.*,

---

[6] Kentucky Rules of Criminal Procedure.

350 S.W.3d 828, 830-31 (Ky. App. 2011), this Court specifically held that "because this matter originated as a dependency, abuse and neglect case under KRS Chapter 620, Appellees' [grandparents'] standing is conferred by virtue of KRS 620.027[.]" Therefore, the grandparents in that case had no need to make a showing of *de facto* custodian status.

In this case, the district court's award of permanent custody to the Baileys was never appealed. Tatum never filed a motion pursuant to KRS 620.110 for immediate entitlement to the child. Under these circumstances, it appears that her petition is more properly treated as one pursuant to KRS 403.340, for modification of an existing custody order rather than an original petition to establish custody. *London v. Collins*, 242 S.W.3d 351, 356 (Ky. App. 2007). However, KRS 403.340(3)(c) also requires best interest findings pursuant to KRS 403.270(2). As this Court may affirm a lower court for any reason supported by the record, and the appropriate findings have been made, there is no impediment to the Court's ability to affirm. *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 (Ky. 2009).

KRS 403.270(2) requires a court making a custody determination to consider "all relevant factors" including:

> (a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b)  The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c)  The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

. . .

(e)  The child's adjustment and continuing proximity to his or her home, school, and community;

. . .

(h)  The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

. . .

(j)  The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k)  The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

In this case, the court clearly considered the wishes of Tatum and the Baileys, as well as those of S.S. KRS 403.270(2)(a)(b). The court also examined the relationship that S.S. has, not only with the parties, but with the Isons and Jeff Adams, those individuals he was most likely to encounter in association with the parties. KRS 403.270(2)(c). The court, through its commissioner, took pains to interview S.S. and gain insight into his "adjustment and continuing proximity to his or her home, school, and community[.]" KRS 403.270(2)(e). However, it made no specific findings as to this factor, nor did the court make findings as to KRS 403.270(f), (g), and (i).

As to KRS 403.270(h), the court found that the Baileys have seen to the medical, educational, and financial needs of S.S. since 2011. Further, the court described the circumstances of the Bailey's permanent custody award from the district court in the dependency, neglect, and abuse action. KRS 403.270(j).

The trial court recognized that the Baileys allowed Tatum visitation as they deemed appropriate during the intervening years and that after she filed her petition for custody, they entered an agreed temporary order allowing visitation during the pendency of the circuit court action. The court did not make a specific finding regarding the likelihood of "frequent, meaningful, and continuing contact" with Tatum. KRS 403.270(2)(k). However, the court did not indicate that its

failure to do so was the result of the domestic violence order which she has in force against Mr. Bailey.

The trial court's findings were clearly adequate pursuant to CR 52.01, encompassing all the factors "relevant" to its determination that it is in the best interest of S.S. to remain in the permanent custody of the Baileys, denying Tatum's petition.

### III.   Guardian *ad litem*:

Tatum appears to misunderstand the role of a guardian *ad litem*.  She suggests that one should have been appointed to be present with her son during his interview with the domestic relations commissioner to ensure that his statements were free of coercion.  Pursuant to the Family Court Rules of Procedure and Practice[7] Rule 6, a court "may" appoint a guardian *ad litem* for a child in a custody proceeding upon motion of a party or upon the court's own motion.  However, there is no statutory or other mandate for such an appointment and Tatum made no motion for the trial court to do so.  *Morgan v. Getter*, 441 S.W.3d 94, 96 (Ky. 2014).  We can find no error here.

### CONCLUSION

For the foregoing reasons, we affirm the findings of fact and conclusions of law of the Letcher Circuit Court.

---

[7] FCRPP.

ALL CONCUR.


BRIEF FOR APPELLANT:              BRIEF FOR APPELLEE:

Tatum Beth Bailey, *pro se*          Danny Lee Lunsford, Jr.
Linefork, Kentucky                   Harlan, Kentucky