Laura GLODO, Appellant

v.

**Warren and Brenda EVANS; T.M.Y., a Minor Child; T.P.Y., a Minor Child; S.J.Y., a Minor Child; and Michael Young, Appellees**

NO. 2015–CA–000185–ME

Court of Appeals of Kentucky.

RENDERED: OCTOBER 23, 2015; 10:00 A.M.

Brief for Appellant: Marsha Taylor McKee, Kentucky.

Brief for Appellee: Barrett G. Freeman Corbin, Kentucky.

BEFORE: CLAYTON, NICKELL, AND THOMPSON, JUDGES.

## OPINION

CLAYTON, JUDGE:

Laura Glodo appeals the Laurel Circuit Court's decree awarding permanent custody of her three minor children to Warren and Brenda Evans, the paternal grandparents. Michael Young, the father, waived custody of the three children. After careful consideration, we vacate and remand since the Evanses failed to establish by clear and convincing evidence that Laura was an unfit parent, and therefore, the Laurel Family Court erred in awarding custody of the children to them.

### FACTUAL AND PROCEDURAL BACKGROUND

Laura Glodo and Michael Young are the biological parents of three children— T.M.Y. (d.o.b. 4/23/2004), T.P.Y. (d.o.b. 4/22/2005), and S.J.Y. (d.o.b. 3/12/2013). In November 2013, Laura was incarcerated. Prior to her incarceration, a default and summary judgment was entered, on May 25, 2011, stating that the children shall reside with Michael. At that time, Michael and the children lived with his parents, Warren and Brenda Evans. But in February 2014, Michael was incarcerated, and the Evanses assumed the children's care. Four months after Michel's incarceration, in June 2014, Laura was released from jail.

S.J.Y., the youngest child, has special medical needs. The Evanses do not feel that they are capable of providing this care, so S.J.Y. is living with their friends, who apparently, are better able to provide for his needs. Although at the time of the default judgment, the Cabinet for Health and Family Services was involved, it does not currently play a role. Hence, neither the Evanses' home nor Laura's home have been evaluated. Further, the family court has not addressed the issue of S.J.Y.'s physical custody with the Evanses' friends,

and no order or consent exists regarding this placement.

On May 2, 2013, the Evanses filed a verified petition for permanent custody of the three children in Whitley Circuit Court. Attached to the petition was Michael Young's consent to give his parents permanent custody of the three children. Next, an agreed order was entered on June 24, 2013, transferring venue to Laurel County. No further action occurred regarding the initial petition for child custody, but the Evanses filed another petition for child custody on May 9, 2014. Attached to the petition was Michael's previous consent that the Evanses be given permanent custody of the three minor children. On October 30, 2014, the Evanses filed a petition to be designated as *de facto* custodians.

A hearing was held on November 4, 2014. Prior to the hearing, Michael executed an "entry of appearance," affirming his earlier consent and waiving his right to appear at the hearing on the matter. The children were represented at the hearing by a Guardian *Ad Litem*. Additionally, the Evanses and Laura appeared at the hearing. Brenda, Laura, and Laura's mother testified.

On January 7, 2015, the family court entered a decree of custody awarding the Evanses permanent custody. In the decree, the family court found that the Evanses had not established *de facto* custodian status, that the mother was unfit to have custody because of substance abuse and incarceration, that the father waived custody, and that it was in the best interests of the children that the Evanses be awarded permanent custody.

It is from this order that Laura now appeals. Laura argues that Warren and Brenda have not proven by clear and convincing evidence that she is an unfit parent, and consequently, no grounds have been proven to award permanent custody to nonparents.

## STANDARD OF REVIEW

Trial courts are vested with broad discretion in matters concerning custody and visitation. *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000). Further, in the absence of an abuse of discretion, we will not disturb a trial court's decision. *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009). "Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision." *Sherfey v. Sherfey*, 74 S.W.3d 777, 783 (Ky. App. 2002) (internal quotation marks omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted). The test is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).

Addressing the appellate review of a trial court's findings of fact, the standard is well-established. Questions as to the weight and credibility of a witness are purely within the province of the court acting as fact-finder and due regard shall be given to the court's opportunity to judge the witness's credibility. Kentucky Rules of Civil Procedure (CR) 52.01; *Sherfey*, 74 S.W.3d at 782 (Ky. App. 2002) (*overruled on other grounds by Benet v. Commonwealth*, 253 S.W.3d 528 (Ky. 2008)). Therefore, factual determinations made by the circuit court will not be disturbed on appeal unless clearly erroneous.

CR 52.01. Findings of fact are not clearly erroneous if supported by·substantial evidence. *Sherfey, supra.*

■ Finally, we conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether the ruling was correct as a matter of law. *Laterza v. Commonwealth,* 244 S.W.3d 754, 756 (Ky. App. 2008). "Under this standard, we afford no deference to the trial court's application of the law to the facts[.]" *Id.* (Citation omitted.)

With these standards in mind, we turn to the case at hand.

## ANALYSIS

■ Indisputably, parents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children. *Davis v. Collinsworth,* 771 S.W.2d 329, 330 (Ky. 1989). In the case at bar, the Evanses are nonparents seeking custody. They sought judicial recognition as *de facto* custodians. The statute setting forth the requirements for *de facto* status is Kentucky Revised Statutes (KRS) 403.270. This statute permits someone who has acted as a child's primary caregiver to be deemed the *de facto* custodian of the child and stand on an equal footing with the child's biological parents in custody determinations.

Here, the family court determined that the Evanses did not qualify as *de facto* custodians because the children had not lived with them for the requisite time period. Further, the youngest child has been living with non-relatives. We agree that the Evanses do not qualify as *de facto* custodians.

■ For a nonparent to seek custody who does not meet the statutory standard of *de facto* custodian in KRS.403.270, the nonparent must establish either of the following two exceptions to a parent's superi-
or right or entitlement to custody: (1) that the parent is shown·by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence. *Moore v. Asente,* 110 S.W.3d 336, 359 (Ky. 2003); *Truman v. Lillard,* 404 S.W.3d 863 (Ky. App. 2012). In sum, for the family court to confer permanent custody of the children to them, the Evanses must prove by clear and convincing evidence either that the parents have waived custody or are unfit. Regarding waiver of custody, Michael waived his superior right to custody, but Laura did not.

■ Therefore, the only path for the Evanses to have standing is to establish by clear and convincing evidence that Laura was an unfit parent. And if successful in so proving, because a child's best interests are paramount in custody matters, the grandparents must still establish that it serves the children's best interests to confer custody to them. *Moore, supra.*

As noted above, it is a very high bar for us to reject the factual findings of a family court. In the instant case, we recognize that it must be shown by clear and convincing evidence that·Laura was unfit. A careful examination of the evidence shows a dearth of evidence that Laura is an unfit mother. Keeping in mind that the standard to prove unfitness is clear and convincing evidence, here, in essence, all we have is a conclusory finding in the decree that Laura was an unfit parent:

> However, the Court finds the mother is unfit to have custody. The mother has a serious substance abuse problem. Because of her substance abuse and incarceration, she has not cared for the children in several years. She appears to be doing better recently; but the Court cannot find that she is able to care for these children primarily.

This statement is less a finding than an opinion. Because no other findings are provided, we do not believe that the grandparents have provided clear and convincing evidence that Laura is unfit. We conclude not that the family court's findings were inaccurate but rather they were insufficient to demonstrate Laura's unfitness.

■ As stated in *Davis v. Collinsworth*, "[t]he type of evidence that is necessary to show unfitness on the part of the mother in this custody battle with a third party is: (1) evidence of inflicting or allowing to be inflicted physical injury, emotional harm or sexual abuse; (2) moral delinquency; (3) abandonment; (4) emotional or mental illness; and (5) failure, for reasons other than poverty alone, to provide essential care for the children." 771 S.W.2d 329, 330 (Ky. 1989). Indeed, the nonparent must show by clear and convincing evidence that the parent has engaged in conduct similar to activity that could result in the termination of parental rights by the state. *Moore*, 110 S.W.3d at 360.

The Evanses contend that there is a plethora of evidence; we are not persuaded. The only witness for the grandparents was Brenda herself. Her testimony did not address Laura's unfitness but primarily discussed that the best interest of the youngest child because of his special medical needs to remain with the grandparents' friends. Laura also testified. She explained that she has had a substantial change in her behavior since her release from prison. Laura acknowledged that she had a substance abuse problem, was now sober, attended AA meetings, has passed all drug tests, is working full-time, and has had the children a significant period of time since her release from prison including almost the entire month of June.

Laura's mother testified and provided that her daughter was working very hard to combat her substance abuse problems,

employed full-time, and prepared to raise her children. Laura's mother also stated that the children could live at her home. As mentioned by the Evanses, Laura's mother opined that it would be a struggle for Laura but that she could do it. When the family court asked the Guardian *ad Litem's* opinion on the custody issue, he stated that it was a very close call and never really answered the family court's query. Finally, the evidence does not support, as observed in *Moore,* that Laura has engaged in conduct similar to activity that could result in termination of parental rights by the state. *Id.* at 360.

■ The clear and convincing evidence standard requires a party with the burden of proof to produce evidence substantially more persuasive than preponderance of the evidence but not beyond a reasonable doubt. *Fitch v. Burns,* 782 S.W.2d 618, 622 (Ky. 1989). That is simply not the case here. Moreover, although it is not necessary to address the best interest calculus under KRS 403.270 because we have determined that substantial evidence was not provided to show Laura's unfitness, we caution that the family court's decree is deficient in its analysis of this statutory mandate. *Moore,* 110 S.W.3d at 360. Again, the decree provides conclusory statements rather than an in-depth evaluation of the children's best interest.

A best interest analysis under KRS 403.270 requires consideration the wishes of the child's parent and any *de facto* custodian; the wishes of the child as to his custodian; the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests; the child's adjustment to home, school, and community; the mental and physical health of all individuals involved; information, records, and evidence of domestic violence as defined in KRS

403.720; the extent to which the child has been cared for, nurtured, and supported by any *de facto* custodian; the intent of the parent or parents in placing the child with a *de facto* custodian; and, the circumstances under which the child was placed or allowed to remain in the custody of a *de facto* custodian to allow the parent to seek employment, work, or attend school. Notwithstanding that it is not pertinent to the resolution of this case, the decree of custody is deficient in its analysis of the children's best interest.

## CONCLUSION

Thus, we vacate and remand the Laurel Family Court's decree of custody. The Evanses failed to meet the clear and convincing burden necessary to show that Laura was unfit. Accordingly, the family court's order was in error since it was not based on substantial evidence. Lastly, we observe that the most recent court order regarding the custody of these three minor children is the May 25, 2011 default and summary judgment.

ALL CONCUR.