RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0066-MR

ANGELIQUE GONZALES                                                    APPELLANT

v.
APPEAL FROM OWSLEY CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
ACTION NO. 18-CI-00069

RICHARD BALL; YOLANDA BALL; AND
NATHAN NORRIS                                                          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Angelique Gonzales appeals from an order of the

Owsley Circuit Court which granted sole custody of Appellant's children to

Richard and Yolanda Ball.  The trial court held that Appellant was an unfit parent

and that it would be in the children's best interests for the Balls to have custody.

We believe the trial court erred in concluding Appellant was unfit; therefore, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Appellant and Nathan Norris are the biological parents of two children. When the orders being appealed in this case were entered, the children were two and three years of age. Richard and Yolanda Ball are the paternal grandparents of the children. Appellees filed a petition for custody in July of 2018 with the Owsley Circuit Court. At the time of the filing of the petition, Appellant was residing in Missouri.

A hearing was held before a domestic relations commissioner on October 18, 2018. Afterward, the commissioner submitted a recommended order which granted Appellant and Mr. Norris joint custody. Mr. Norris had issues regarding domestic violence toward Appellant and drug addiction; therefore, the commissioner suggested he be granted supervised visitation one week per month with the Balls supervising. Thereafter, the parties agreed that Mr. Norris should get two weeks of visitation every other month. On March 1, 2019, the trial court entered an order which adopted the commissioner's recommended order. The order also included the requested visitation change.

On July 1, 2020, Appellees filed a motion seeking to hold Appellant in contempt for failing to abide by the timesharing agreement and to award

Appellees emergency custody of the children. The motion alleged that Appellant was not allowing Mr. Norris to exercise his visitation and that Appellant was believed to be abusing drugs. Neither Appellant nor her attorney appeared for the hearing regarding the contempt and emergency custody issues. The trial court granted the motion for emergency custody in favor of Appellees.

On August 27, 2020, Appellees filed a motion requesting that the Balls be granted sole custody of the children or, in the alternative, that Mr. Norris be granted sole custody. Mr. Norris requested that the court grant the Balls custody because he has some serious health issues and he wanted his parents to have legal rights to the children in case his health declined. A hearing was held before the domestic relations commissioner on August 31, 2020, where multiple people testified. On November 15, 2020, the commissioner entered a proposed order that held that Appellant was an unfit parent, that Mr. Norris waived his superior right to custody, and that the Balls should be granted sole custody of the children. The commissioner believed Appellant was unfit because she had a pattern of drug use, she failed to maintain a stable environment for the children, she disappeared with the children, she failed to comply with the timesharing orders of the court, she failed to recognize bruising on one of the children that "may be abuse," and that she had "all-around poor parenting skills[.]" The commissioner

-3-

concluded that Appellant should be granted visitation with the children for one weekend a month.

On January 1, 2021, the trial court entered an order affirming the recommended order of the commissioner. The trial court held that Appellant was unfit because of her history of drug abuse, her transient lifestyle, her frequent moves, that she had a variety of men she brought to her home, that she "parties at night and sleeps through the day," and that she leaves the children for days at a time with others to care for them. The court found it would also be in the best interests of the children for the Balls to have sole custody. The trial court also awarded Appellant visitation with the children for one weekend a month, unless otherwise agreed to by the parties. This appeal followed.

## **ANALYSIS**

Appellant's primary argument on appeal is that the commissioner and trial court erred in granting sole custody to the Balls. Appellant argues that the facts do not support the finding that she was an unfit parent.

> Trial courts are vested with broad discretion in matters concerning custody and visitation. Further, in the absence of an abuse of discretion, we will not disturb a trial court's decision. Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. The test is not whether we as an

appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion.

Addressing the appellate review of a trial court's findings of fact, the standard is well-established. Questions as to the weight and credibility of a witness are purely within the province of the court acting as fact-finder and due regard shall be given to the court's opportunity to judge the witness's credibility. Kentucky Rules of Civil Procedure (CR) 52.01[.] Therefore, factual determinations made by the circuit court will not be disturbed on appeal unless clearly erroneous. CR 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence.

Finally, we conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether the ruling was correct as a matter of law. Under this standard, we afford no deference to the trial court's application of the law to the facts[.]

*Glodo v. Evans*, 474 S.W.3d 550, 552-53 (Ky. App. 2015) (internal quotation marks and citations omitted). "[P]arents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *Id.* at 553 (citation omitted).

For a nonparent to seek custody who does not meet the statutory standard of *de facto* custodian in [Kentucky Revised Statutes (KRS)] 403.270, the nonparent must establish either of the following two exceptions to a parent's superior right or entitlement to custody: (1) that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence.

*Id.* (citations omitted).

> As stated in *Davis v. Collinsworth*, "[t]he type of evidence that is necessary to show unfitness on the part of the mother in this custody battle with a third party is: (1) evidence of inflicting or allowing to be inflicted physical injury, emotional harm or sexual abuse; (2) moral delinquency; (3) abandonment; (4) emotional or mental illness; and (5) failure, for reasons other than poverty alone, to provide essential care for the children." 771 S.W.2d 329, 330 (Ky. 1989). Indeed, the nonparent must show by clear and convincing evidence that the parent has engaged in conduct similar to activity that could result in the termination of parental rights by the state.

*Id.* at 554 (citation omitted). To determine what conduct might result in the termination of parental rights, we must also look to KRS 625.090, the statute governing the involuntary termination of parental rights. KRS 625.090 states in pertinent part:

> (1) The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence that:

> > (a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

> > 2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding;

3. The child is found to have been diagnosed with neonatal abstinence syndrome at the time of birth, unless his or her birth mother:

a. Was prescribed and properly using medication for a legitimate medical condition as directed by a health care practitioner that may have led to the neonatal abstinence syndrome; or

b. Is currently, or within ninety (90) days after the birth, enrolled in and maintaining substantial compliance with both a substance abuse treatment or recovery program and a regimen of prenatal care or postnatal care as recommended by her health care practitioner throughout the remaining term of her pregnancy or the appropriate time after her pregnancy; or

4. The parent has been convicted of a criminal charge relating to the physical or sexual abuse or neglect of any child and that physical or sexual abuse, neglect, or emotional injury to the child named in the present termination action is likely to occur if the parental rights are not terminated;

(b) The Cabinet for Health and Family Services has filed a petition with the court pursuant to KRS 620.180; and

(c) Termination would be in the best interest of the child.

(2) No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

(b) That the parent has inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;

(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;

(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to any child;

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

(f) That the parent has caused or allowed the child to be sexually abused or exploited;

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;

(h) That:

    1. The parent's parental rights to another child have been involuntarily terminated;

    2. The child named in the present termination action was born subsequent to or during the pendency of the previous termination; and

    3. The conditions or factors which were the basis for the previous termination finding have not been corrected;

(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect;

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights; or

(k) That the child has been removed from the biological or legal parents more than two (2) times in a twenty-four (24) month period by the cabinet or a court.

With all of this in mind, we now turn to the case before us. We do not believe the evidence was sufficient to support the commissioner and trial court's conclusions that Appellant is an unfit parent. First, one of the factual findings made by the commissioner and the trial court is clearly erroneous. Both the commissioner and trial court found that Appellant's living situation was unstable. While the testimony indicated that Appellees did not always know where

Appellant was living, the evidence at the hearing indicated that once Appellant took the children to Missouri, she was either living with her mother or her boyfriend. This is not substantial evidence that Appellant's living situation was unstable or that she was a transient.

In addition, the commissioner indicated that bruising on one of the children might have been caused by abuse. There is no evidence in the record to support a finding that this bruise was in fact caused by abuse. Ms. Ball was the one to see the bruise on one of the children during a video call. She did not inform Appellant of the bruise, but did call the Missouri social services. The Missouri social services investigated Appellant, examined the children, and examined Appellant's home. The social services department found no issues and did not open a case into Appellant or the children. Not all bruises on children equate to physical abuse.

Further, the commissioner and trial court found that Appellant's leaving the children with other caregivers, sometimes for days at a time, was inappropriate; however, the evidence indicated that the children usually stayed with Appellant's mother or Appellant's sister. There was no evidence to indicate that these two people were inappropriate caregivers or that Appellant left the children with dangerous people.

Finally, while the commissioner and trial court indicated Appellant had a history of drug abuse, there is no evidence that she currently abuses drugs. There is evidence in the record that Appellant tested positive for drugs in 2017; however, she passed a hair follicle drug test shortly before the most recent custody hearing. In addition, every person who testified stated that they had not personally witnessed Appellant use drugs. The witnesses for Appellees speculated that Appellant was abusing drugs, but there was no direct evidence of such.

Based on the evidence, at most, Appellant may lack maturity when making parenting decisions and she may not always cooperate with the timesharing orders of the court. This is not sufficient to declare Appellant unfit. There was no evidence that the children were abandoned, were in danger, were abused, or lacked food, clothing, or shelter. There is no substantial evidence to support a finding that any of the factors listed in *Glodo* or KRS 625.090 are present in this case.[1] If Appellant is not unfit, then the Balls are not entitled to custody of the children.

Appellant raises other issues on appeal, but they are moot.

## CONCLUSION

We conclude that the domestic relations commissioner and the trial court erred when they declared Appellant to be an unfit parent. We reverse and

---

[1] We note that neither the commissioner nor the trial court directly mentioned these unfit parent factors in their orders.

-11-

remand this case and direct the trial court to return custody of the children to Appellant.

ALL CONCUR.


BRIEF FOR APPELLANT:

Dawn M. Gentry
John Hayden
Newport, Kentucky

BRIEF FOR APPELLEES:

Barbara Anderson
Lexington, Kentucky